

FILED
JAN 30 2014
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**RAZA H. SIKANDAR,**

    Petitioner,

v.                                     Civil Action No. **3:13CV59**

**HAROLD CLARKE,**

    Respondent.

## MEMORANDUM OPINION

Raza H. Sikandar, a Virginia prisoner proceeding *pro se*, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254. Sikandar challenges his convictions in the Circuit Court of the County of Fauquier ("Circuit Court") for five counts of obtaining money by false pretenses and five counts of uttering a bad check. In his Amended § 2254 Petition ("§ 2254 Petition," ECF No. 8), Sikandar demands relief upon the following grounds of ineffective assistance of counsel:[1]

| | | |
|---|---|---|
| Claim 1 | | Sikandar received ineffective assistance at sentencing. |
| | (i) | The prosecutor misrepresented that the Plea Agreement required Sikandar to pay the full of restitution amount prior to sentencing. The Plea Agreement allowed Sikandar to pay restitution at sentencing. (§ 2254 Pet. at 3; *see id.* at 5.) |
| | (ii) | Counsel "failed to determine whether [Sikandar] was ready and willing to make the restitution payment at sentencing." (*Id.* at 5.) |
| | (iii) | Counsel "failed to coordinate payment of [restitution] with [Sikandar's] family." (*Id.*) |
| | (iv) | Counsel "failed to notify the [Circuit Court] of [Sikandar's] readiness and willingness to pay [the full amount of restitution]." (*Id.*) |
| Claim 2 | | Sikandar "WAS PREJUDICED BY TRIAL COUNSEL'S DEFICIENT PERFORMANCE IN ADVISING [Sikandar] TO ACCEPT A PLEA BARGAIN WHEN [Sikandar] HAD AN AVAILABLE DEFENSE THAT WOULD HAVE FOUND HIM |

---

[1] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

INNOCENT OF THE CHARGES AGAINST HIM." (*Id.* at 5–6 (emphasis omitted).)

Claim 3    Sikandar "WAS PREJUDICED BY APPELLANT COUNSEL'S DEFICIENT PERFORMANCE IN FAILING TO APPEAL THE ERRONEOUS CALCULATION OF HIS SENTENCING GUIDELINES UNDER VIRGINIA LAW . . . ." (*Id.* at 7 (emphasis omitted).)

Respondent has moved to dismiss on the grounds that, *inter alia*, Sikandar's claims lack merit.[2] Sikandar has responded. For the reasons set forth below, the Motion to Dismiss (ECF No. 15) will be granted.

## I. PROCEDURAL HISTORY

Pursuant to a plea agreement, Sikandar pled guilty to five counts of obtaining money by false pretenses and five counts of uttering a bad check. *Sikandar v. Dir. of the Dep't of Corr.*, at 1–2, No. 120625 (Va. Dec. 17, 2012) ("State Habeas Op."). During his plea colloquy, Sikandar admitted that the prosecution's evidence would show that between December 3, 2008 and December 8, 2008 he cashed 5 separate checks, each of which exceeded $2,000, and that he knew he lacked sufficient funds to cover those checks when he presented those checks. (June 22, 2009 Tr. 17–22.) Sikandar further admitted that he told the police that "he knew the SunTrust and BB&T accounts in question lacked the funds to cover those checks [and] said that he knew that they would bounce but intended to pay the bank[s] back when he had the money." (June 22, 2009 Tr. 22.) Pursuant to the Plea Agreement, Sikandar agreed "that on or prior to the date the Court sets for sentencing he will pay restitution as follows: $6,300 to Fauquier Bank and $4,100

---

[2] Respondent also suggests that, to the extent that in Claims 1(ii), 1(iii), and 2 Sikandar seeks to raise different claims from those he advanced in his state habeas proceedings, such claims are unexhausted and procedurally defaulted. (Br. Supp. Mot. Dismiss 6–11, ECF 17.) Sikandar insists, and the Court finds, that the claims in the § 2254 Petition raises essentially the same claims Sikandar raised on state habeas. (Br. Opp'n 3, ECF No. 20.) Accordingly, the Court proceeds to address the merits of Sikandar's claims.

to BB&T (Branch Banking and Trust)." Plea Agreement ¶ 3, *Commonwealth v. Sikandar*, No. CR09–99, CR 09–100, CR09–128 through CR09–139 (Va. Cir. Ct. filed June 22, 2009). Upon Sikandar's payment of restitution, the prosecution agreed to recommend that Sikandar receive a total term of imprisonment of ten years for the ten charges to which he pled guilty and "all but two (2) years and two (2) months of said sentence be suspended." (*Id.* ¶ 5.) The Plea Agreement further provided that "if the defendant fails to make full and complete restitution . . . on or before the sentencing date the Commonwealth is free to argue for any sentence it deems appropriate." (*Id.*)

On January 25, 2010, at the beginning of the sentencing hearing, Sikandar moved to withdraw his guilty plea. (Jan. 25, 2010 Tr. 5.) Sikandar then personally addressed the Circuit Court explaining that he did not think his attorney had done a good job and that Sikandar now believed that he was innocent. (Jan. 25, 2010 Tr. 5–6.) The Circuit Court denied the motion, observing, "I'm very unimpressed. I think you're guilty as sin . . . ." (Jan. 25, 2010 Tr. 9.)

Prior to sentencing, Sikandar failed to pay the required restitution. (Jan. 25, 2010 Tr. 10.) Counsel for Sikandar represented that, "Mr. Sikandar's intention was to pay the restitution on or before his sentencing date." (Jan. 25, 2010 Tr. 11.) However, Sikandar's wife left him, Sikandar was incarcerated, and thus "he has not been able to come up with the funds to pay, to make the restitution." (Jan. 25, 2010 Tr. 11.) Counsel further informed the Circuit Court that Sikandar's family "had been willing to come up with some [of the restitution amount], but because the full amount couldn't be had, the plea agreement would have been breached either way." (Jan. 25, 2010 Tr. 11.)

3

Before imposing a sentence, the Circuit Court provided Sikandar with an opportunity to speak. (Jan. 25, 2010 Tr. 34.) Sikandar addressed the Circuit Court at length. (Jan. 25, 2010 Tr. 34–42.) Sikandar, however, never mentioned during that statement that he or his family had the funds to pay restitution. The Circuit Court then sentenced Sikandar to ten years of imprisonment with all but three years and six months suspended. (Jan. 25, 2010 Tr. 44.)

On September 28, 2010, the Court of Appeals of Virginia denied Sikandar's petition for appeal. *Sikandar v. Commonwealth*, 0457-10-4, at 1 (Va. Ct. App. July 28, 2010). On April 6, 2011, the Supreme Court of Virginia refused Sikandar's petition for appeal. *Sikandar v. Commonwealth*, No. 102147, at 1 (Va. Apr. 6, 2011).

On April 6, 2012, Sikandar filed a petition for a writ of habeas corpus with the Supreme Court of Virginia, wherein he raised many of the same claims he raises in his § 2254 petition. Petition for Writ of Habeas Corpus at 1, *Sikandar v. Dir. of the Dep't of Corr.*, No. 120625 (Va. filed Apr. 6, 2012). On December 17, 2012, the Supreme Court of Virginia dismissed the petition for a writ of habeas corpus. *State Habeas Op.*, 12.

## II. APPLICABLE CONSTRAINTS UPON FEDERAL HABEAS REVEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may

4

not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).[3]

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The second component of *Strickland*, the prejudice component, requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not

---

[3] In light of the foregoing statutory structure, the Supreme Court of Virginia's factual findings and disposition of Sikandar's claims figure prominently in this Court's opinion.

necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### A. Alleged Ineffective Assistance with Respect to the Plea Agreement

In Claim 1(i), Sikandar faults counsel for failing to correct the prosecutor when he stated at sentencing that the plea agreement required that restitution be paid prior to sentencing. In rejecting Claim 1(i), the Supreme Court of Virginia found:

> Petitioner contends counsel should have objected because the prosecutor misrepresented a material term of the plea agreement as it allowed payment of restitution on or before the sentencing date not exclusively prior to the sentencing date.
> The Court holds that this portion of claim (1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. Petitioner proffers no evidence and nothing in the record indicates that petitioner paid the restitution in full on or before the date set for sentencing pursuant to the terms of the plea agreement. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

*State Habeas Op.*, at 2–3. The Virginia Supreme Court's rejection of this claim was reasonable. *See* 28 U.S.C. § 2254(d)(1)–(2). Sikandar was not prejudiced by the prosecutor's comments or by an omission by his counsel, but rather by his own failure to pay restitution before or at sentencing. Accordingly, Claim 1(i) will be DISMISSED.

In Claims 1(ii)–(iv), Sikandar contends that his counsel performed deficiently with respect to informing the Circuit Court of Sikandar's or Sikandar's family's ability to fulfill the Plea Agreement by paying the full of amount of restitution at sentencing. Specifically, Sikandar contends that counsel should have consulted with Sikandar's family at sentencing and informed the Circuit Court that Sikandar's family was willing and able to pay the full amount of restitution. In rejecting this claim, the Supreme Court of Virginia concluded that trial counsel,

6

Thomas E. Lester, had no reason to believe Sikandar's family could or would pay the full amount of restitution at sentencing. *See State Habeas Op.*, at 3–4. The Supreme Court explained:

> In another portion of claim (1), petitioner alleges he was denied the effective assistance of counsel because counsel failed to inform the prosecutor and the trial court at the sentencing hearing that petitioner's parents were present with a check to pay the restitution in full.[4] As a result, petitioner contends he was deprived of the benefit of the plea agreement and was sentenced to serve three years and six months instead of two years and two months.
>
> The Court holds that this portion of claim (1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the affidavit of counsel, demonstrates that during counsel's contact with petitioner's family regarding the restitution payment between the time of the guilty plea hearing and sentencing, they never informed counsel that they could pay the full restitution on or before the sentencing date. Furthermore, they never told counsel that they had a check for the full restitution payment at the sentencing hearing and counsel had no knowledge that they possessed such a check at the sentencing hearing. Moreover, even if the restitution had been paid in full on the date of sentencing, the trial court would not have been bound by the Commonwealth's sentencing recommendation and petitioner fails to establish that the court would have followed the Commonwealth's recommendation. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

*Id.*

In support of his state habeas petition, Sikandar's brother, Billal Hasan Sikandar, submitted an affidavit where he swore that, "I contacted Raza's attorney a few days prior to the sentencing hearing to notify him that my family was going to pay the restitution for Raza's case, however, I received no response." Petition for Writ of Habeas Corpus, Billal Sikandar Affidavit

---

[4] In conjunction with his state habeas petition, Sikandar submitted a copy of the check his parent had allegedly written to pay restitution and affidavits from family members attesting to the fact that they had the check in the courtroom on the day of Sikandar's sentencing. *See* Attachments to Petition for Writ of Habeas Corpus, *Sikandar v. Dir. of the Dep't of Corr.*, No. 120625 (Va. filed Apr. 6, 2012)

¶ 10, *Sikandar v. Dir. of the Dep't of Corr.*, No. 120625 (Va. filed Apr. 6, 2012). Billal, however, fails to state that he actually communicated to trial counsel Sikandar's family intent to pay the full amount of restitution at sentencing. Moreover, trial counsel submitted a lengthy, detailed affidavit, which dispels the notion that counsel had any reason to believe Sikandar's family could or would pay the full amount of restitution at sentencing. *See Johnson v. Johnson*, No. 3:10cv502, 2011 WL 2708328, at *7 n.17 (E.D. Va. July 12, 2011) (observing that it is "not unreasonable for the state courts to credit [an] attorney's specific affidavit over [a petitioner's] conclusory affidavit" (citing *Strong v. Johnson*, 495 F.3d 134, 139–40 (4th Cir. 2007))). Specifically, counsel swore:

> 11. I spoke with Raza Sikandar's father, Syed Sikandar, a number of times regarding the payment of the restitution amount that had to be paid as a condition of the plea agreement. Initially, Syed Sikandar indicated that he was unwilling to pay any amount of the restitution. At some point Syed Sikandar's position changed regarding his willingness to assist in paying the restitution amount, but he indicated that he was unable to pay all of the funds on or before the sentencing date. At no time did Syed Sikandar, or any other of Raza Sikandar's family members, indicate to me that they were able to pay the full restitution amount on or before the sentencing date. The night before the sentencing hearing I spoke extensively to at least one of Raza Sikandar's family members and [sic] who made no mention of the family being in a position to pay the restitution amount. Prior to the sentencing hearing beginning I greeted the Sikandar family at the Fauquier County Courthouse, none of them said anything to me about having the restitution funds. It was in my client's interest to see the restitution funds paid. Had anyone indicated to me that they had the restitution funds, I would have immediately raised the issue with the Commonwealth's Attorney and, if necessary, the court. I believe that the Commonwealth's Attorney would have accepted the payment as fulfillment of the plea agreement. The day following the sentencing hearing I spoke with Syed Sikandar by telephone, he called to apologize for his son's "rude" behavior in court, there was no mention of the restitution payment in that telephone conversation.
> ....
> 18. At the outset of my retention in Raza Sikandar's case his parents indicated their inability and unwillingness to pay the restitution. In the weeks prior to Raza Sikandar's sentencing hearing his parents had a change of heart about paying the restitution, but Syed Sikandar indicated that he would need time to make

> payments toward the restitution amount. I explained that the plea agreement required payment in full by the time of sentencing. I attempted, unsuccessfully, to negotiate a payment plan with the Commonwealth's Attorney. The Commonwealth's Attorney mentioned that he was already overlooking Raza Sikandar's status as a fugitive from Prince William County and he expected the agreement to be fulfilled in order to get the benefit of the more lenient recommendation.
>
> 19. I did not correct the record regarding the Commonwealth's statement that the agreement had been breached, largely because it was my opinion that it had been breached. The restitution payment had not been made and no one had indicated to me that they were prepared to pay it. Further, the plea agreement was a part of the record and it reflected the terms of the plea as it related to when the payment needed to be made.
>
> 20. I did not advise the court that Raza Sikandar's family was prepared to make the restitution payment because I had no such knowledge. In the weeks before Raza Sikandar's sentencing date I had had several conversations with members of the Sikandar family regarding their desire to pay a portion of the restitution amount with the balance coming in installments. I explained the change in circumstances to the Commonwealth's Attorney and requested that he accept a payment plan as fulfillment of the plea agreement. The Commonwealth's position was that the [sic] Raza Sikandar must fulfill the terms of the plea agreement in order to get the benefit of it.
>
> 21. It is true that I received an email (attached as Exhibit 1) from Raza Sikandar's brother Bilal [sic] Sikandar on January 5, 2010. In his email Bilal [sic] Sikandar raised the topic of certain funds that were seized from Raza Sikandar's home at the time of his arrest, not about the payment of restitution. At the time that I received Bilal [sic] Sikandar's email message I had already discussed the seized funds with Raza Sikandar's father and sister in the preceding forty-eight hours and again in the two days before sentencing. Their position was that they could not make the entire restitution payment *even with the seized funds*. It may be that the Sikandar family's position with regard to the payment of the restitution changed in the hours before Raza Sikandar's sentencing, but this was not brought to my attention.

Motion to Dismiss Ex. 6 ("Lester Aff.") ¶ 11, ¶¶ 18–21, *Sikandar v. Dir. of the Dep't of Corr.*, No. 120625 (Va. filed July 25, 2012).[5] Given the record before it, the Supreme Court of Virginia's rejection of Claims 1(ii)–(iv) was reasonable. *See* 28 U.S.C. § 2254(d)(1)–(2). Accordingly, Claims 1(ii)–(iv) will be DISMISSED.

---

[5] Nothing in the Circuit Court record indicates that, following his sentencing, Sikandar or his family paid the full amount of restitution.

9

### B. Alleged Ineffective Assistance with Respect to the Plea Agreement

In Claim 2, Sikandar contends that counsel deficiently advised him "to accept a plea bargain when Petitioner had an available defense that would have found him innocent of charges against him." (§ 2254 Pet. 5–6 (emphasis omitted) (capitalization corrected).) The pertinent statute provides:

> Any person who, with intent to defraud, shall make or draw or utter or deliver any check, draft, or order for the payment of money, upon any bank . . . knowing, at the time of such making, drawing, uttering or delivering, that the maker or drawer has not sufficient funds in, or credit with, such bank, banking institution, trust company, or other depository, for the payment of such check, draft or order, although no express representation is made in reference thereto, shall be guilty of larceny; and, if this check, draft, or order has a represented value of $200 or more, such person shall be guilty of a Class 6 felony. In cases in which such value is less than $200, the person shall be guilty of a Class 1 misdemeanor.
> The word "credit" as used herein, shall be construed to mean any arrangement or understanding with the bank, trust company, or other depository for the payment of such check, draft or order.
> Any person making, drawing, uttering or delivering any such check, draft or order in payment as a present consideration for goods or services for the purposes set out in this section shall be guilty as provided herein.

Va. Code Ann. § 18.2–181 (West 2013). In order to sustain a conviction of larceny by false pretenses, "the Commonwealth must prove: '(1) an intent to defraud; (2) an actual fraud; (3) use of false pretenses for the purpose of perpetrating the fraud; and (4) accomplishment of the fraud by means of the false pretenses used for the purpose . . . .'" *Austin v. Commonwealth*, 723 S.E.2d 633, 636 (Va. Ct. App. 2012) (omission in original) (quoting *Bourgeois v. Commonwealth*, 227 S.E.2d 714, 717 (Va. 1976)).[6]

---

[6] Sikandar faced a sentence of between one and twenty years for each of his convictions for larceny by false pretenses. *See* Va. Code Ann. 18.2–178(A) (West 2013); Va. Code. Ann. 18.2–95 (West 2013). For his five counts of uttering a bad check, *see* Va. Code Ann. § 18.2–181 (West 2013), Sikandar faced "a term of imprisonment of not less than one year nor more

Sikandar argues that:

> Petitioner did not intend to defraud the banks in question. Among other factors, petitioner had overdraft protection on the relevant bank accounts; his writing of checks in excess of his balance in this context is not evidence of intent to defraud, merely the intent to assume a standard commercial debt under the terms of the Uniform Commercial Code.

(§ 2254 Pet. 6.) Sikandar, however, fails to direct to the Court to any evidence as to why any overdraft protection he may have had could possibly cover the checks at issue. *See Bagheri v. Commonwealth*, 408 S.E.2d 259, 263 (Va. Ct. App. 1991) (rejecting challenge to sufficiency of the evidence for uttering bad checks where defendant failed to demonstrate his bank would extend credit to cover his overdrafts); *cf. United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004) (observing that where a petitioner faults counsel for not calling a witness, the petitioner must provide "concrete evidence of what [the witness] would have testified to in exculpation," so that the reviewing court can adequately assess the significance of the decision not to call the witness).[7]

Moreover, Sikandar's counsel explained why Sikandar had little hope of succeeding on this defense of mistake or any other defense:

---

than five years, or in the discretion of the jury or the court trying the case without a jury, confinement in jail for not more than 12 months and a fine of not more than $2,500, either or both." Va. Code Ann. 18.2–10 (West 2013). In contrast, by the terms of the Plea Agreement, if Sikandar paid full restitution, the Commonwealth agreed to recommend that Sikandar receive an active term of imprisonment of only two years and two months for all of his crimes.

[7] Sikandar also alleges that his "wife also tried to replenish the subject accounts with sufficient funds the day after the checks were tendered." (§2254 Pet. 6.) Sikandar, however, once again fails to advance, as he must, any concrete evidence of such efforts by his wife. *See Terry*, 366 F.3d at 316 (finding a petitioner must provide evidence as to exculpatory testimony from a potential witness). Accordingly, this aspect of Claim 2 lacks merit and will be DISMISSED.

11

> 58. I explored every defense that I believed reasonably applied to Raza Sikandar's case and discussed each defense with him thoroughly. On June 5 and 18, 2009, specifically, we spent a great deal of time on this issue.
>
> 59. I discussed with Raza Sikandar on numerous occasions the evidence that my investigation and the discovery revealed. It was my opinion that the evidence simply did not support a defense of mistake, a point that Raza Sikandar and I discussed on numerous occasions and which I believe he understood.
>
> 60. As I have indicated above, I specifically discussed with Raza Sikandar what I believed to be the overwhelming evidence against him: his recorded admission to investigators that he personally wrote and cashed each of the checks at issue, knowing that he did not have the funds in his bank account; that the account was opened using another person's Social Security Number; the photographic evidence of Raza Sikandar at multiple banks on the same day cashing checks far exceeding his account balance; his recorded statement to police that he cashed all of the checks to pay for oral surgery; the likelihood that he would have to testify in order to introduce a mistake defense, which could very well expose at least part of his criminal record involving fraud; the likelihood that evidence of the checks cashed in Prince William County, at or near the same time was likely to be admitted to show a scheme; and, that his bank records would reflect the single deposit of $2,400.00 and repeatedly cashed checks for $2,200.00 each, which would contradict the defense of mistake and buttress the government's knowledge element.
>
> 61. I explored, investigated and researched the defense of mistake and shared my opinion extensively with Raza Sikandar. It was my opinion that no reasonable jury would believe that his actions were the result of a mistake. I further shared my opinion with Raza Sikandar that such a defense might anger a jury and could impact any sentencing recommendation to the court.
>
> 62. I repeatedly advised Raza Sikandar that the choice of whether to go to trial was his and that I would do my best to represent him zealously no matter what his decision. I also told Raza Sikandar that I thought it [sic] that going to trial, given the circumstances, was not a good choice for him. I believed then, and I believe now, that I would have provided ineffective assistance if I had advised or encouraged Raza Sikandar to go to trial.

(Lester Aff. ¶¶ 58–62.) Counsel reasonably perceived that the defense Sikandar suggests had little chance of succeeding with a jury given Sikandar's admissions to police, his conduct in setting up the accounts and passing the checks at issue and, his lengthy history of crimes of a similar nature. Sikandar's conduct and record overwhelmingly indicate his intent to defraud the banks. Indeed, when Sikandar suggested his conduct was nothing more than an honest mistake,

12

the Circuit Court remarked, "I'm very unimpressed. I think you're guilty as sin . . . ." (Jan. 25, 2010 Tr. 9.) Given the near certainty of a conviction on the ten charges to which Sikandar pled guilty and the significant reduction in his sentencing exposure under the terms of the Plea Agreement, counsel acted in an eminently reasonable manner in advising Sikandar to plead guilty. Accordingly, Claim 2 will be DISMISSED.

### C. Alleged Deficient Performance of Appellate Counsel

In Claim 3, Sikandar contends that appellate counsel performed deficiently by failing to argue that the Circuit Court erred in calculating Sikandar's sentence under Virginia's sentencing guidelines. (§ 2254 Pet. 7.) Appellate counsel reasonably eschewed raising such a claim because "[a] judge's failure to follow the sentencing guidelines 'shall not be reviewable on appeal or the basis of any other post-conviction relief.'" *Harmon v. Commonwealth*, No. 0694–11–4, 2012 WL 1204361, at *3 (Va. Ct. App. Apr. 10, 2012) (quoting Va. Code § 19.2–298.01(F)). Accordingly, Claim 3 will be DISMISSED because Sikandar fails to demonstrate deficiency on the part of counsel.

### IV. CONCLUSION

The Motion to Dismiss (ECF No. 15) will be GRANTED. The petition for a writ of habeas corpus will be DENIED. The action will be DISMISSED.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or

that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Sikandar fails to satisfy this standard. A certificate of appealability will be DENIED.

An appropriate Final Order shall accompany this Memorandum Opinion.

Date: /-30-/4
Richmond, Virginia

/s/
James R. Spencer
United States District Judge

14